# FRANCISCO SUAREZ
## *v.*
# ROMAN VALDES ET AL.

---

San Juan, Admiralty, No. 762.

1. A seaman who, while at work with one foot on a revetment and one on the stern of a vessel, and in the act of placing a box which he had carried on the vessel, is injured as a result of the gang plank of a ferryboat sweeping along the revetment and pinioning his leg against the vessel, is entitled to recover for such injuries, where the failure to keep the ferryboat under control in attempting to make a landing was due to the fact that no provision was made for attaching her bow to the revetment, and that no employee was on hand to receive her hawser, although, as had been the habit for over thirty years, the seaman depended upon the adhesion of the gang plank to the

revetment when it came into contact, and it failed to come into contact at the particular time.

2. Damages in the sum of $4,000 may be given to a seaman between thirty and forty years of age, who is competent, industrious, sober, and is earning a salary of $25 per month, where, by a collision of a ferryboat with the boat upon which he is working, one of his legs is injured so as to necessitate its amputation.

Opinion filed April 27, 1912.

––––––––––

*Mr. Hugh R. Francis* for libellant.

*Messrs. Martin Travieso, Jr.,* and *N. B. K. Pettingill* for respondents.

CHARLTON, Judge, delivered the following opinion:

At the marina in San Juan there is a stone revetment or seawall extending in a north and south direction for a distance of approximately 250 feet, and being raised about a distance of 3 feet above mean low tide. At its northwestern end it turns at a right angle to the east, making the basin of the marina, and 12 meters south of the northeast corner where the turn is made, is the landing place of the Linea Ferrea del Oeste, operated by the defendant Ramon Valdes.

For a space of 2 meters to the south of the angle of the seawall or revetment, there is a space reserved for vessels licensed to ply on the bay of San Juan, between San Juan and Cataño, as well as the east and west line lying east of the point of turning and along the south side of the basin.

Suarez v. Valdes.

The Linea Ferrea del Oeste operates a line of ferryboats between San Juan and Cataño.

This libel is a consolidation of two libels, one brought against the New York & Porto Rico Steamship Company, in which it was alleged that the proximate cause of the accident was the sweeping of the ferryboat Valdes over against the licensed lauch Sultana by reason of the revolution of the wheel of the steamship Carolina, belonging to the said defendant company, and the consequent disturbance of the water. Another libel was brought by the same plaintiff against Ramon Valdes, alleging the cause of the accident to have been the negligent management and insufficient equipment of the ferryboat Valdes belonging to the line operated by him.

Upon motion, both these libels were consolidated, and they were tried together, and at the conclusion of the testimony the defendant the New York & Porto Rico Steamship Company moved to be dismissed for the reason that the proof failed to show that any disturbance caused by the revolution of the engine of the Carolina was the proximate cause of the injury, and said motion was sustained, and said company dismissed. The libel then remained as against Ramon Valdes solely.

The testimony showed that upon November 16, 1910, between the hours of two and three in the afternoon, the Sultana, a double-deck passenger gasolene launch of 40 feet in length, being a licensed craft plying across the bay of San Juan, between San Juan and Cataño, was properly moored and completely at rest in the customary berth set apart for the landing of such licensed craft along the seawall or revetment above described, and that at said time the ferryboat Valdes approached her customary landing place on said revetment, on a trip from Cataño to San

Juan. That on approaching her landing place, her gang plank was lowered almost to a level with the top of the revetment or seawall, and one of the deck hands attached to said craft ran forward, jumped upon the seawall, and placed a mooring hawser over a mooring post provided for that purpose, the other end of which was attached to the starboard stern of the ferryboat Valdes. For some reason not abnormal and to have been anticipated and guarded against by proper precaution, the ferryboat Valdes did not succeed in making a landing, and on reversing her engines her bow was swung to the north and west and swept along the top of the revetment or seawall. At that moment, the plaintiff, Francisco Suarez, was in a position with one foot on the seawall and the other foot on the stern of the launch Sultana, in the act of placing a box which he had carried upon the deck of the Sultana, intending to take passage upon her for Cataño. The gang plank so lowered swept to the north and west until it came in contact with the upper works of the Sultana, and pinned the right leg of the libellant, Francisco Suarez, against the upper works or superstructure of the launch Sultana, with such force as to make necessary the amputation of said leg.

The testimony showed that the equipment of the ferryboat Valdes was insufficient; that the persons who had charge of her were inefficient; that no provision was made for attaching her bow by mooring it to the seawall or revetment; that no employee was on hand on said seawall or revetment to receive a hawser; and that the boat moored as they attempted to moor her was liable to get beyond control, and did get beyond control, by the negligent failure to provide sufficient appliances to keep her under control, and to prevent injury to persons who by right were on said seawall or revetment.

Suarez v. Valdes.

The testimony showed further that it had been the habit of the persons operating that boat to depend for her stability at her bow upon the weight and adhesion of the gangplank in contact with the top of the seawall. Such contact failed to be made in this case.

In explanation of the failure to make a landing in any other or different or more safe way, testimony was offered showing that the manner of landing that was attempted on that day was the manner which had prevailed uninterruptedly for thirty years, which is simply another illustration of that devotion to the antique and slavish adherence to medievalism which prevails in the operation of this public service corporation. The bull cart, another work of antiquity, is giving place to the truck, but it would seem that generations yet unborn will fail to see any change or any improvement in the service offered by the Linea Ferrea del Oeste. And in regard to that, the lines of Alexander Pope seem very apposite: "Man never is, but always to be blest."

The testimony showed, beyond any successful contradiction or modification, that the injury sustained by the libellant was wholly due to the negligent provision and operation of the ferryboat belonging to and operated under the direction of Ramon Valdes; and that the libellant was rightfully in the position which he occupied when the injury which he sustained was inflicted upon him.

The testimony showed him to be a man between thirty and forty years old, of ordinary intelligence, and with persons dependent upon him, who was earning his livelihood by a monthly remuneration or wage of $25. His employer, who had employed him for a considerable time, testified that he was competent for

his service, that he was industrious and sober, and a good citizen.

The libel prayed damages in the sum of $35,000, which, if it had been submitted to a jury, would have shown the triumph of hope over experience, but the matter was heard by the court alone, and, after careful consideration, I have decided to assess his damages at the sum of $4,000, and it is so ordered.